NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| POLICE OFFICER JOSEPH M. LaPOSTA, <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF ROSELAND and RICHARD McDONOUGH, in his profesional and personal capacity, jointly and severally, <br><br> Defendant. | **Hon. Dennis M. Cavanaugh** <br><br> **OPINION** <br><br> Civil Action No. 06-5827 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Borough of Roseland ("Roseland") and Defendant, Chief of Police of the Roseland Police Department, Richard McDonough ("McDonough," and collectively, "Defendants") to dismiss all of the claims asserted by Plaintiff Police Officer Joseph M. LaPosta in the Complaint pursuant to FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' FED. R. CIV. P. 12(b)(6) motion to dismiss is **granted**.

**I.   BACKGROUND**

Plaintiff filed the Complaint against Roseland and McDonough on or about December 5, 2006 for claims that purportedly arose out of Plaintiff's employment with Roseland as a Civilian Police Dispatcher and later as a Police Officer. Roseland is a municipality located in Essex

County, New Jersey. (Complaint ¶ 2). Roseland is a public employer with its own police department. Roseland hired Plaintiff in 2000 as a Civilian Police Dispatcher and in 2001 as a Police Officer, a position in which he still serves. (Complaint ¶ 1 & 5).

Throughout Plaintiff's tenure as a Roseland Police Officer, the Fraternal Order of Police ("FOP") served as the collective bargaining representative for police officers. The FOP and Roseland are parties to a Labor Contract – a negotiated agreement that provides the rates of pay for officers in each position and assignment. (Complaint ¶ 12). Plaintiff alleges that "[a]t the time of the assignment and through Officer LaPosta's tenure, there was a negotiated contract between [Roseland] and the members of the bargaining unit. Within that negotiated contract there is a provision that states, in substance and in part, any officer assigned to the Detective Bureau shall be given a stipend of Two Thousand Fifty Dollars ($2,050.00)." (Complaint ¶ 12).

Plaintiff's claims in his Complaint derive from the collective bargaining agreement ("CBA"). The Labor Contract relevant to the allegations in the Complaint, and referenced in the Complaint, is dated January 1, 2003 through December 31, 2006. Paragraphs 12 through 14 of the Complaint allege that in 2005, Plaintiff was due additional compensation under the Labor Contract for serving as a Detective. Paragraph 17 of the Complaint alleges that Plaintiff could have earned additional compensation under the Labor Contract, but was not permitted to attend the classes necessary for him to qualify for the additional compensation.

The CBA contains a grievance/arbitration clause, which is the exclusive method for resolving disputes over the terms of the Labor Contract. Plaintiff failed to plead that he utilized or exhausted the grievance procedure prior to filing the instant claims.

**II.     STANDARD OF REVIEW: 12(b)(6) MOTION TO DISMISS**

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998).  If after viewing the allegations in the complaint in the light most favorable to the plaintiff it appears beyond a doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In Bell Atl. Corp. v. Twombly, the Supreme Court of the United States clarified the FED. R. CIV. P. 12(b)(6) standard. See 127 S.Ct. 1955 (2007).  Specifically, the Court "retired" the language contained in Conley v. Gibson that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Bell Atl. Corp., 127 S.Ct. at 1968 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Instead, the Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp., 127 S.Ct. at 1965.

**III.    DISCUSSION**

    **A.  PLAINTIFF'S CLAIM UNDER 42 U.S.C. § 1983 FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

> action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Section 1983 does not provide any substantive rights, but rather a remedy for the violation of rights otherwise provided under federal law. See Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Thus, in order to establish a § 1983 violation, a plaintiff must demonstrate (1) that he or she was deprived of rights, privileges or immunities secured by the Constitution or laws of the United States; and that the challenged conduct was committed by a person under color of state law. See West v. Atkins, 487 U.S. 42 (1998).

### 1. ANY CLAIMS THAT AROSE BEFORE DECEMBER 6, 2004 ARE BARRED BY THE STATUTE OF LIMITATIONS

Claims brought under 42 U.S.C. § 1983 are governed by the New Jersey statute of limitations for personal injury claims. See Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). In New Jersey, the applicable statute provides for a two year statute of limitations. See N.J.S.A. 2A:14-2. Therefore, such actions must be convened within two years of accrual of the cause of action. See Brown v. Foley, 810 F.2d 55 (3d Cir. 1987).

Here, the Complaint outlines an allegation that allegedly occurred in or about 2001, when Plaintiff first became a Police Officer. (Complaint ¶ 6). McDonough allegedly forced Plaintiff to join the FOP. To the extent this alleges some sort of denial of freedom of expression, this Claim is barred because it occurred more than five years before the Complaint was filed. Plaintiff also

alleges that McDonough retaliated against Plaintiff due to Plaintiff's decision to join the Policemen's Benevolent Association ("PBA") in April 2004. This also occurred more than two years before the Complaint was filed. (Complaint ¶ 7). Paragraphs 8 and 9 are similarly barred by the statute of limitations because they relate only to alleged incidents which occurred during Plaintiff's "tenure as a civilian police dispatcher." Plaintiff was a Civilian Police Dispatcher no later than December 4, 2001 and, thus, these claims are barred by the statute of limitations. Finally, paragraph 10 of the Complaint refers to a disciplinary incident that occurred in or about July or August 2004, which is similarly outside the two year limitations period.

### 2. THE REMAINING FACTUAL ALLEGATIONS ARE SUBJECT TO THE GRIEVANCE PROVISIONS AND MUST BE DISMISSED FOR PLAINTIFF'S FAILURE TO PLEAD THAT HE EXHAUSTED THE GRIEVANCE PROCESS

Paragraphs 12 through 14 of the Complaint address Plaintiff's contention that he deserved a monetary stipend for performing assignments in the Roseland Detective Bureau under the terms of the "negotiated contract" between Roseland and the bargaining unit members. (Complaint ¶ 12). Plaintiff states that he is entitled to a $2,050.00 stipend under the Labor Contract.

Paragraph 17 alleges that McDonough denied Plaintiff the opportunity to attend certain training classes, including, but not limited to, an EMT class. Plaintiff further contends that had he been able to attend such classes and obtain EMT certification, he would have been entitled to additional compensation under the CBA.

N.J.S.A. 34:13A-5.3 provides, in pertinent part, that:

> Grievance and disciplinary review procedures established by agreement between the public employer and the representative organization shall be utilized for any dispute covered by the terms of such agreement.

N.J.S.A. 34:13A-5.3; see also Saginario v. Attorney Gen., 87 N.J. 480, 491 (1981).

The CBA between the FOP and Roseland covered the period from January 1, 2003 through December 31, 2006. It contained a provision relating to stipends for officers serving in a Detective assignment. The Labor Contract provides that an officer assigned to the Detective Bureau shall receive a stipend of $2,050.00. Article VI sets forth the contractual grievance procedure. The Labor Contract defines a grievance as "limited to any controversy arising over the interpretation or adherence to the terms and conditions of employment specifically and expressly established by the provisions of this Agreement and may be raised by any police officer or the FOP." Article VI also outlines the four-step grievance and arbitration process. The Labor Contract provides an administrative remedy for Plaintiff's claims regarding the Defective's monetary stipend and seminar assignments, such as the EMT course. Failing to plead that he has complied with these provisions bars Plaintiff from bringing those claims.

### 3. PLAINTIFF HAS FAILED TO PROVE ANY UNDERLYING VIOLATIONS OF THE FIRST AMENDMENT

In Nittoli v. Morris Cty. Bd. of Chosen Freeholders, the court held that in order to prevail on a First Amendment retaliation claim, a plaintiff must prove "(1) that the conduct at issue was constitutionally protected, and (2) that it was a substantial or motivating factor for the alleged retaliatory conduct." 2007 WL 1521490, slip op. at *4 (D. N.J. 2007). In order for speech to be protected in the public employment context, it must involve a matter of public concern. A "public concern" is defined as speech that "relates to any matter of political, social, or other concerns to the community." Id. (citing Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003)). In order to determine whether a public employee's speech involves a matter of public concern, the

court must determine whether the employee's speech was aimed at advancing a personal interest. See McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005). This analysis requires a review of the content, form and context of the speech. See Holder v. City of Allentown, 987 F. 2d 188, 195 (3d Cir. 1997). If the speech advances a personal interest, the speech is a matter of private concern. See Nittoli, slip op. at *4.

In Nittoli, in granting the public employer's motion to dismiss an employee's § 1983 claim, the Court found that the plaintiff's speech only involved individual treatment by certain supervisors. Specifically, with regard to her hostile work environment claims, the plaintiff did not attempt to bring to light any claims of systemic discrimination, but rather only individual issues of discrimination. Nittoli distinguishes the decisions in Holder and Baldassare v. State of N.J., 250 F.3d 188 n.11 (3d Cir. 2001). Both of these opinions "involved a plaintiff who was working to expose wrongdoing on the part of public officials to the public at large, acting as a citizen, rather than an employee bringing individual concerns to the attention of her superiors . . . ." Nittoli, 2007 WL 1521490, slip op. at *4.

Here, Plaintiff's allegations involve private concerns. Plaintiff argues that he suffered retaliation by McDonough for Plaintiff expressing an interest in joining the PBA, which is not the collective bargaining representative for officers in Roseland. Plaintiff further alleges that McDonough took issue when Plaintiff asked him to discontinue the use of scented candles due to Plaintiff's alleged allergies. Plaintiff also alleges that he was refused a Detective's stipend under the CBA and was denied the opportunity to attend certain classes and seminars. The final general allegation is that Plaintiff was disciplined by McDonough as a result of his actions. Each of these

allegations advances Plaintiff's interests and not claims of systemic problems within the Police Department. The claims do not involve political, social or community concerns and, therefore, must be dismissed.

### B. PLAINTIFF'S TORT CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE NEW JERSEY TORT CLAIMS ACT

Plaintiff has alleged three tort Counts against Roseland: negligence, hostile work environment and civil conspiracy. Plaintiff has not pled in the Complaint that notice of these tort claims was provided to Roseland before instituting the current action.

The New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq*. ("Tort Claims Act") bars liability for public entities and public employees, except in certain limited circumstances. The Tort Claims Act reflects the New Jersey Legislature's response to the judicial abrogation of the traditional doctrine of sovereign immunity in Willis v. Dept. of Cons. & Ec. Dev. See 55 N.J. 534 (1970).

The Tort Claims Act is meant to be strictly interpreted to effectuate its purpose of limiting a public entity and its employees' liability. See Brooks v. Odom, 150 N.J. 395, 402 (1997). The Tort Claims Act immunizes public entities and public employees as a general rule, with liability as an exception to that rule. See Gilhooey v. County of Union, 164 N.J. 533, 538 (2000). To that end, the Tort Claims Act provides that no lawsuits may be brought against a public entity or public employee, unless the claim upon which the lawsuit is based was presented in accordance with the procedure set forth in the Tort Claims Act. See N.J.S.A. 59:8-3. This procedure is set forth in the subsequent subsections, which specify the content of the presented claim and require the claimant's signature. See N.J.S.A. 59:8-4-5. Furthermore, a "claim for

injury or damages arising under this act against a local public entity shall be filed with that entity." N.J.S.A. 59:8-7. N.J.S.A. 59:8-8 requires that a "claim relating to a cause of action for death or for injury or damage to a person shall be presented as provided in this chapter no later than the ninetieth day after the accrual of the cause of action." N.J.S.A. 59:8-8. A plaintiff may file a lawsuit only after six months have elapsed from the date the claim notice is received by the public entity or public employee. See id.

The requirement that a public entity or public employee receive adequate and timely notification of a claim is so essential to the legislative intent of limited public entity liability that a "claimant shall be forever barred from recovering against a public entity or public employee" if that claimant "failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9." N.J.S.A. 59:8-8(a). "The purpose of the claims notification requirement," notes the 1972 Task Force Comment "is two-fold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of the suit; [and] (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense."

In Pillonero v. Twp. of Old Bridge, the New Jersey Superior Court, Appellate Division echoed the Task Force's commentary in holding that the Tort Claims Act's notice requirement is meant to facilitate investigation of a claim so that the claim may be settled without resorting to the courts and to allow the public entity prompt access to the claim so that it may prepare an adequate defense. See 236 N.J. Super. 529, 533 (App. Div. 1989). In Velez v. City of Jersey City, the New Jersey Supreme Court held that the Notice requirements of the Tort Claims Act were not

limited to negligence claims alone, but rather also applied to causes of action based on the intentional conduct of a public employee. See 180 N.J. 284 (2004).

Here, Plaintiff filed his Complaint on December 5, 2006. Plaintiff, however, has never served McDonough or Roseland with a Notice of Tort Claim regarding any of the alleged tortuous conduct for which Plaintiff complains. (Certification of Chief McDonough). Therefore, Plaintiff cannot be permitted to improperly proceed with his state law claims against McDonough, who is a Roseland employee, a public entity, due to his failure to serve a Notice of Tort Claim as mandated by N.J.S.A. 59:8-8.

### C. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CAUSE OF ACTION

FED. R. CIV. P. 8(a) requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a). The pleading must contain allegations from which each of the material elements necessary to support recovery under some cognizable legal theory can be discerned. See Jordan v. Altnerative Res. Corp., 458 F.3d 332 (4th Cir. 2006).

To assert a *prima facie* case of hostile work environment, a plaintiff must allege: (1) that he or she suffered intentional discrimination because of his or her membership in a protected class; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected him or her; (4) that the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of *respondeat superior* liability. See West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995). Also, the plaintiff must show harassing behavior "sufficiently severe or pervasive" to alter the conditions of his employment. See Pa.

10

State Pol. v. Suders, 542 U.S. 129, 133 (2004). Under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, a hostile work environment claim requires similar elements. In particular, it requires a showing that the conduct would not have occurred, but for the employee's protected trait.

The specificity required by Fed. R. Civ. P. 8 in a Civil Rights Act Complaint was laid-out in Hall v. Pa. State Police. See 570 F.2d 86 (3d Cir 1978). The court held that a plaintiff's Complaint met the pleading standard of Rotolo v. Borough of Charleroi, 532 F.2d 920, 922-23 (3d Cir. 1976) when it "alleged the conduct violating his rights (racially discriminatory activity), time (March 17, 1976), place (King of Prussia) and those responsible (various state and bank officials)." Hall, 570 F.2d at 89.

Here, Plaintiff fails to satisfy the liberal Fed. R. Civ. P. 8(a) notice requirements. He has not alleged the conduct violating his rights, *i.e.*, activity based on his race, national origin, religion, etc. Moreover, he has not identified any civil rights statute that was violated by the alleged conduct. These deficiencies warrant dismissal of this Claim because no valid statutory claim has been identified as pled.

### D.    PLAINTIFF'S NEGLIGENCE CLAIM IS BARRED BY THE WORKERS' COMPENSATION ACT

Court Four of the Complaint, entitled "Negligence," alleges that Roseland acted "in a careless, negligent and reckless manner in that it was put on notice that a hostile work environment existed within its police department year ago . . . but never took any action to either investigate the allegations or to curb the conduct of McDonough in creating the hostile work environment, as well as the other illegal actions toward Officer LaPosta." (Complaint ¶ 30).

11

Plaintiff claims that he was injured as a result of the negligence.

"The Workers' Compensation system has been described as a historic 'trade-off' whereby employees relinquish their right to pursue common law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." Laidlow v. Hariton Machinery Co., Inc., 170 N.J. 602, 605 (2002) (citing Millison v. E.I. du Pont de Numours & Co., 101 N.J. 161, 174 (1985). The Workers' Compensation Act is intended to "substitute finite liability for the fortuities of the common law remedy." Dudley, 32 N.J. at 489 (quoting Mazzuchelli v. Silberberg, 29 N.J. 15, 23 (1959)). By accepting the Workers' Compensation Act, while an employer assumes an immunity from common law suits in cases of workplace employee injuries, it also accepts a limited, but absolute, liability, regardless of fault. Conversely, while an employee relinquishes the right to sue his or her employer or co-worker in a common law cause of action, he or she also gains the smaller, but certain statutory measure of damages. Id. (citing Wilson v. Faull, 27 N.J. 105 (1958)). This "trade-off" is reflected in the Workers' Compensation Act. See N.J.S.A. 34:15-8. Hence, in cases covered by the Workers' Compensation Act, the statutory "liability" for a Workers' Compensation claim excludes an employer or co-worker's potential liability under another theory of recovery.

Here, Plaintiff is an employee working for Roseland. All of his claims against Roseland relate to incidents that allegedly occurred during his employment. Thus, there is no possible theory by which Plaintiff can proceed with this claim. The Workers' Compensation statute provides Plaintiff's exclusive remedies and bars this claim, so it must, therefore, be dismissed.

E.     **PLAINTIFF'S CIVIL CONSPIRACY CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In order to state a claim for "civil conspiracy," Plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Sunkett v. Misci, 183 F. Supp. 2d 691, 722 (D. N.J. 2002) (quoting Morgan v. Union Cty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993)). "Most importantly, 'the gist of the claim is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action.'" State, Dept. of Treasury, Div. of Inv. ex. rel. McCormac v. Quest Commc'ns. Intern., 387 N.J. Super. 469, 486 (App. Div. 2006) (quoting Morgan, 268 N.J. Super. at 364 (quoting Bd. of Educ. of Asbury Park v. Hoek, 38 N.J. 213, 238 (1962)).

Plaintiff has failed to allege that two or more persons engaged in the alleged conspiracy. Plaintiff alleges that "Defendant Borough and Defendant McDonough, as well as other employees of the defendants, conspired, schemed and plotted against Officer LaPosta to violate his federal constitutional rights, as well as his statutory rights and other rights afforded them by law." (Complaint ¶ 38). Thus, Plaintiff is alleging that a conspiracy existed between Roseland and its employees.

"When the officers of a corporation are acting in their corporate capacity, they cannot conspire with the corporation alone." Sunkett, 183 F. Supp. 2d at 722. Similarly, in the public sector, it is recognized that officers of governmental entities cannot conspire with the entity. Id.; see also Farris v. County. of Camden, 61 F. Supp. 2d 307 (D. N.J. 1999). In Sunkett, the court

13

held that "the rationale is simple: An abstract entity can only act through its officers, so that a conspiracy between the officers and the entity is like a dance with one's own shadow." 183 F. Supp. 2d at 722. Such a conspiracy is only possible when the employees or agents of the entity are acting outside the course and scope of their employment. See Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999). In Marjac, LLC v. Trenk, *et al.*, which involved a civil conspiracy claim against the Township of West Orange and various employees and officials, the court dismissed the claim pursuant to a FED. R. CIV. P. 12(b)(6) motion because the plaintiffs "failed to allege that any of the Defendants were acting outside of their official capacity when they engaged in the alleged conduct. Defendants, acting as agents and employees of West Orange, cannot conspire among themselves."

Here, Plaintiff has not alleged that any of Roseland's employees acted outside the scope of their employment in allegedly conspiring against Plaintiff. Plaintiff's civil conspiracy claim must, therefore, be dismissed.

**IV.   CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' FED. R. CIV. P. 12(b)(6) motion to dismiss is granted.  An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh<br>
Dennis M. Cavanaugh, U.S.D.J.

Date:        October 23, 2007
Orig.:       Clerk
cc:          Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File